In re Rosalie McClintock
HANSCOM, Debtor.

Travelers Property and Casualty,
Plaintiff,

v.

Rosalie McCLintock Hanscom,
Defendant.

Bankruptcy No. 00–13872.
Adversary No. 01–1013.

United States Bankruptcy Court,
D. Rhode Island.

Feb. 15, 2002.

Russell D. Raskin, Raskin & Berman, Providence, RI, for Debtor/Defendant.

Sherry A. Goldin, Goldin, Merolla & Tutalo, Providence, RI, for Plaintiff.

Charles A. Pisaturo, Law Offices of Charles A. Pisaturo, Providence, RI, Chapter 7 Trustee.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Before the Court is the Debtor's Motion for Extension of time to file a notice of

appeal, to which the Plaintiff, Traveler's Property and Casualty objects. At issue is a factual determination of when the motion for extension of time was filed. After hearing, upon consideration of the evidence, and for the reasons set forth below, the motion to extend time is DENIED.

### BACKGROUND

On October 3, 2001, I granted Traveler's Motion for Summary Judgment and held that the debt owed to Travelers by the Debtor was nondischargeable under 11 U.S.C. § 523(a)(4). The parties agree that the 10 day appeal period on this judgment expired on October 13, 2001, but because the 13th was a Saturday, the deadline was extended to Monday, October 15, 2001 by operation of law. *See* Fed. R. Bankr.P. 9006(a). The Debtor's attorney, Russell Raskin, Esq. claims that on October 15, 2001, he timely filed a Motion seeking an extension of the deadline to file an appeal. However, the Debtor's Motion for extension of time bears a Clerk's office file stamp of October 16, 2001 at "16:10," or 4:10 p.m. Travelers argues that the Debtors request for an extension of time is untimely and should be denied.

■ The Debtor/Movant argues that the Clerk's file stamp must be incorrect because the request for an extension was timely filed on October 15, along with six unrelated bankruptcy petitions, and that all of the documents he filed on the 15th are incorrectly file marked October 16, 2001. Debtor's counsel also argued for the first time at the hearing that if the request for extension is found to be untimely, then, alternatively, I should find that he acted with excusable neglect on the ground that he misread a file stamp from a copy of the Motion for Extension seen on the Court's

web site, arguing that the "6" in the file stamp looked like a "5". While advocating in the alternative, and arguing fall back positions is an ancient and familiar practice, in some scenarios it just can't work— i.e., as here, where the file stamp is either incorrect because of a clerk's error, or whether it is correct, resulting in a late filing. The Debtor's alternative arguments are mutually exclusive—it's one or the other—it can't be either or both. Having said that, mostly for advisory purposes and for future use, I will nevertheless address the Debtor's excusable neglect argument, and rule that the request for an extension on that ground is untimely. A party seeking an extension of time to file a late notice of appeal based upon excusable neglect must file a written motion "not later than 20 days after the expiration of the time for filing a notice of appeal." *Id.* The first time counsel ever mentioned "excusable neglect" was at the hearing on November 8, 2001, well after the 20 day limit. Additionally, even if the excusable neglect argument were regarded as timely, the Debtor has not demonstrated excusable neglect under the standards set forth in *Pioneer Inv. Servs. Co. v. Brunswick,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).[1]

### DISCUSSION

■ Extensions of time to file appeals are governed by Federal Rule of Bankruptcy Procedure 8002 which states:

(2) A request to extend the time for filing a notice of appeal must be made by written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed not later than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable

---

1. Counsel's argument that he misread a file stamp on the Court's web site does not

amount to excusable neglect.

neglect. An extension of time for filing a notice of appeal may not exceed 20 days from the expiration of the time for filing a notice of appeal otherwise prescribed by this rule or 10 days from the date of entry of the order granting the motion, whichever is later.

Fed. R. Bankr.P. 8002(c)(2).

The main issue here is whether the disputed motion was timely filed, and I find that it was not. Mr. Raskin's legal secretary, Deborah Cates, testified that she hand delivers documents to the Court for Mr. Raskin five days a week, and that she has a specific recollection regarding the filing in question. Ms. Cates stated that generally she delivers several bankruptcy petitions and other papers, and that the petitions are placed into separate manila envelopes. When she has other papers to file, she often puts them in with the new bankruptcy petitions, if they are not too bulky, and then delivers the entire package to the Clerk's office at between 4:10 and 4:15 p.m. each day. She stated that she does not wait for the clerk to open the envelopes, and just leaves the entire package for processing.

Ms. Cates testified that on October 15th she recalled one of the legal secretaries telling her that she had an important document that needed to be filed that day, and while she does not usually examine the documents, this time she did, and recalls seeing the Debtor's name, "Rosalie McClintock," on the paper. She was filing six bankruptcy petitions that day and had six manila envelopes prepared to go to the Bankruptcy Court. She testified that she "stuck the McClintock papers into one of the manila envelopes," with an unrelated bankruptcy petition, left her office around 4:00 p.m., as usual, and handed all of the manila envelopes and a check for $1,200 for the filing fees for the new bankruptcies to the intake clerk at the Bankruptcy Court around 4:15 on the 15th. All six bankruptcy petitions are file marked October 16, 2001, between 9:30 a.m. and 9:57 a.m. *See In re Thomas,* BK No. 01–13880, Docket No. 1; *In re Scorpio,* BK No. 01–13881, Docket No. 1; *See In re Renaud,* BK No. 01–13882, Docket No. 1; *See In re Allen,* BK No. 01–13883, Docket No. 1; *See In re Curran,* BK No. 01–13884, Docket No. 1; *See In re Sherman,* BK No. 01–13885, Docket No. 1. It is undisputed that the instant motion seeking an extension of time to file a notice of appeal bears the Clerk's office file stamp of October 16, 2001, "16:10" or 4:10 p.m.

The Court also heard the testimony of Patrice Moone, an intake clerk, who testified as to her recollection of the events in question. Moone stated that since September 14, 2001, when for security purposes the use of the night deposit box was discontinued, the intake clerks had an informal arrangement with Attorney Raskin's office for filings: i.e., because Ms. Cates typically arrived between 4:10 and 4:20 p.m. each day with substantial filings,[2] and because this is so close to the 4:30 p.m. closing time, with no opportunity to open all the new petitions, the new cases would be held until the next morning to be processed, unless Cates advised that a particular case needed to be filed *and filed marked* that day, and provided a separate check for the filing fee. The intake clerk would open all of the manila envelopes on the evening they were filed, and if there were other papers in the envelopes unrelated to the petitions, they would be file stamped and processed that afternoon. The petitions would be placed on the front counter for processing the next morning, and the filing fees placed in the safe. The

---

**2.** Messrs. Raskin and Berman file more bankruptcy cases in this Court than any other attorney or firm.

next morning, the new cases would be opened and the filing fees deposited into the cash register.

Ms. Moone testified that on October 15, 2001, she followed the above-described procedure with the Raskin filings. She stated that she was the clerk who accepted the six new bankruptcy petitions on October 15, that she opened all of the envelopes, and does not recall seeing any other documents. She stated that Ms. Cates gave her no special instructions, or notice that anything time-sensitive was in the package. She placed the new cases on the intake counter for processing the next morning, when she opened and processed all six bankruptcy petitions, time stamped each one, and examined each petition to verify it for completeness. She said that if the motion in question was included with the petitions and was somehow overlooked the prior afternoon, she could not have missed it while processing the petitions in the morning. Ms. Moone stated that she can think of no scenario where a document is filed on the 15th but does not get time stamped until 4:10 p.m. on the 16th, and reiterated that if the motion to extend time was with the six bankruptcy petitions filed by Ms. Cates, and was somehow overlooked when delivered for filing, it would have been time stamped, *at the latest*, the morning of October 16th when all the petitions were processed.

Upon consideration of all the evidence, I find as a fact that the motion to extend time was filed at 4:10 p.m. on October 16, 2001, as file marked. While the Clerk's office is by no means infallible, it is telling that the motion in dispute was time stamped at 4:10 p.m., the time that Ms. Cates generally arrives at the Clerk's office. Given the level of scrutiny that new petitions receive when being opened, I accept as reasonable Ms. Moone's explana-

tion that even if the subject document was in fact delivered, but overlooked on the evening of October 15, 2001, the intake clerk surely would have seen the paper on the morning of October 16th, and would have time stamped it accordingly, *in the a.m.* Additionally, Ms. Cates' specific recollection of seeing the McClintock motion and placing it in one of the manila envelopes is unconvincing, given her usual practice of not looking at documents given to her by the paralegal for filing. While it might be perceived that in this factual dispute Patrice Moone enjoys a "home court advantage," her testimony is accepted simply because it makes common sense and is basically just more believable than the Movant's version of what happened here. The likelihood of things transpiring as suggested by the Debtor is practically nil.[3]

Accordingly, the Motion to Extend Time is DENIED, and the Motion to Amend or Make Findings of Fact, Docket No. 26, is DENIED as moot.

---

**3.** To support her position, the Debtor would have to show that the clerk committed multi-

ple errors of omission regarding this filing— she has not done so.